

DIS: USAO2015R00386

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2015 JUN 16  AM 11: 26
CLERK'S OFFICE
AT GREENBELT
BY____BU____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. TDC 15cr336 |
| | * | |
| DAREN CONDREY, | * | (Conspiracy to Violate the Foreign |
| | * | Corrupt Practices Act and to Commit |
| Defendant | * | Wire Fraud, 18 U.S.C. § 371) |
| | * | |

*******

## INFORMATION

### COUNT ONE

The United States Attorney for the District of Maryland charges:

**Introduction**

At times material to this Information:

1. The Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1, *et seq.*, was enacted by Congress for the purpose of, among other things, making it unlawful for certain classes of persons and entities to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign government official for the purpose of obtaining or retaining business for, or directing business to, any person.

2. JSC Techsnabexport ("TENEX") supplied uranium and uranium enrichment services to nuclear power companies throughout the world on behalf of the government of the Russian Federation. TENEX was indirectly owned and controlled by, and performed functions of, the government of the Russian Federation, and thus was an "agency" and "instrumentality" of a foreign government, as those terms are used in the FCPA, Title 15, United States Code, Section

78dd-2(h)(2).

3. TENEX established a wholly-owned subsidiary company located in the United States in or about October 2010, TENAM Corporation ("TENAM"). TENAM was TENEX's official representative office in the United States. TENAM was indirectly owned and controlled by, and performed functions of, the government of the Russian Federation, and thus was an "agency" and "instrumentality" of a foreign government, as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2).

4. "Foreign Official One," a national of the Russian Federation, was a Director of TENEX from at least 2004 through in or about October 2010, and was the President of TENAM from in or about October 2010 through in or about October 2014. Foreign Official One was a "foreign official," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2). From in or about December 2011 through in or about October 2014, Foreign Official One was a resident of Maryland.

5. "Transportation Corporation A" was a United States company headquartered in Maryland, and thus a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(B). Transportation Corporation A was in the business of providing logistical support services for the transportation of nuclear materials to customers in the United States and to foreign customers.

6. "Co-Conspirator One" was an owner and executive of Transportation Corporation A from in or about 1998 to in or about December 2009, and a consultant to Transportation Corporation A from in or about January 2010 through in or about 2011.

7. The defendant, **DAREN CONDREY** ("**CONDREY**"), was a citizen of the United States and resident of Maryland. Defendant **CONDREY** was an owner and executive of

Transportation Corporation A from in or about August 1998 through in or about October 2014. Defendant **CONDREY** was the co-President of Transportation Corporation A from in or about January 2010 through in or about October 2014. Thus, defendant **CONDREY** was a "domestic concern" and an officer, employee and agent of a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

### The Conspiracy

8. From in or about 2004 and continuing through in or about 2014, in the District of Maryland and elsewhere, the defendant,

**DAREN CONDREY,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Co-Conspirator One and others known and unknown to commit offenses against the United States, namely:

    a. to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to a foreign official, and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of:

        i. influencing acts and decisions of such foreign official in his or her official capacity;

        ii. inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official;

        iii. securing an improper advantage; and

3

      iv. inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist defendant **CONDREY**, Co-Conspirator One, and others in obtaining and retaining business for and with, and directing business to, Transportation Corporation A and others, in violation of Title 15, United States Code, Section 78dd-2; and

    b. to knowingly and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice in violation of Title 18, United States Code, Section 1343.

## Manner and Means of the Conspiracy

The manner and means by which defendant **CONDREY** and his co-conspirators sought to accomplish the objects of the conspiracy included, among other things, the following:

  9. It was part of the conspiracy that defendant **CONDREY** and others discussed in person, and through, among other means, electronic mail ("email"), making bribe payments to Foreign Official One in order to obtain and retain business with TENEX.

  10. It was further part of the conspiracy that defendant **CONDREY** and others offered to pay, promised to pay, and authorized bribe payments for the benefit of Foreign Official One in exchange for Foreign Official One's agreements to help Transportation Corporation A secure business with TENEX.

11. It was further part of the conspiracy that defendant **CONDREY** and others, with the knowledge of Foreign Official One, caused Transportation Corporation A to provide quotations and invoices to TENEX hiding the cost of the bribe payments promised to Foreign Official One within Transportation Corporation A's pricing.

12. It was further part of the conspiracy that defendant **CONDREY** and others, at the direction of Foreign Official One, attempted to conceal the payments to Foreign Official One by making the bribe payments to bank accounts in Cyprus, Latvia, and Switzerland.

13. It was further part of the conspiracy that defendant **CONDREY** and others sent email communications and used other forms of communication in which they used terms like "lucky figure," "LF," "cake," and "remuneration" as code words to conceal the true nature of the bribe payments, and utilized fraudulent invoices which did not truthfully describe the services provided or the purpose of the payments.

14. It was further part of the conspiracy that defendant **CONDREY** and others caused Transportation Corporation A to act as a conduit for a bribe payment another company made to Foreign Official One in order to conceal that bribe payment.

15. It was further part of the conspiracy that defendant **CONDREY** and others wired, and caused to be wired, payments from Transportation Corporation A's bank account in Maryland to bank accounts in Cyprus, Latvia, and Switzerland for the purpose of making bribe payments to Foreign Official One.

### Overt Acts

16. In furtherance of the conspiracy, and to achieve the objects thereof, at least one of the conspirators committed, and caused to be committed, in the District of Maryland and elsewhere, at least one of the following overt acts, among others:

      a.      On or about February 8, 2010, Co-Conspirator One sent an email to Foreign Official One stating "[…] I met with [Transportation Corporation A] principals last week and confirmed the cake process on a quarterly basis – all is well."

      b.      On or about April 3, 2013, in response to an email defendant **CONDREY** received from Foreign Official One inquiring "[p]lease advise when Q1 'LF' can be done […]," defendant **CONDREY** sent an email to Foreign Official One stating "[i]f we receive payment [from Transportation Corporation A] by April 26 (when due) then we may be able to arrange full amount by end of April."

      c.      On or about April 3, 2013, defendant **CONDREY** sent an email to Foreign Official One attaching a spreadsheet that showed the value of certain bribes defendant **CONDREY** and others had promised to Foreign Official One as a percentage of the money Transportation Corporation A received, and would receive, from TENEX.

      d.      On or about May 6, 2013, defendant **CONDREY** and others caused Transportation Corporation A to make a wire transfer payment in the amount of $25,774 from Transportation Corporation A's bank account in Maryland to a bank account in Zurich, Switzerland at the direction of, and for the benefit of, Foreign Official One.

      e.      On or about May 6, 2013, defendant **CONDREY** sent an email to Foreign Official One attaching the details of the $25,774 payment that Transportation Corporation A made to a bank account in Zurich, Switzerland at the direction of, and for the benefit of, Foreign Official One.

      f.      On October 30, 2013, defendant **CONDREY** and others caused Transportation Corporation A to make a wire transfer payment in the amount of $77,896 from Transportation Corporation A's bank account in Maryland to a bank account in Zurich,

Switzerland at the direction of, and for the benefit of, Foreign Official One.

      g.    On or about October 30, 2013, defendant **CONDREY** sent an email to Foreign Official One with the subject "LF" attaching the details of the $77,896 payment that Transportation Corporation A made to a bank account in Zurich, Switzerland at the direction of, and for the benefit of, Foreign Official One.

18 U.S.C. § 371

*Rod J. Rosenstein*
Rod J. Rosenstein
United States Attorney

June 16, 2015
Date