## ATTACHMENT A:
## STIPULATED FACTS – UNITED STATES v. DAREN CONDREY

*If this matter had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The parties agree that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

**DAREN CONDREY ("CONDREY")** was a citizen of the United States and resident of Maryland. **CONDREY** was an owner and executive of Transportation Corporation A from in or about August 1998 through in or about October 2014. **CONDREY** was the co-President of Transportation Corporation A from in or about January 2010 through in or about October 2014. Thus, **CONDREY** was a "domestic concern" and an officer, employee and agent of a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

Transportation Corporation A was a United States company headquartered in Maryland, and thus a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1)(B). Transportation Corporation A was in the business of providing logistical support services for the transportation of nuclear materials to customers in the United States and to foreign customers. These foreign customers included JSC Techsnabexport ("TENEX").

TENEX supplied uranium and uranium enrichment services to nuclear power companies throughout the world on behalf of the government of the Russian Federation. TENEX was indirectly owned and controlled by, and performed functions of, the government of the Russian Federation, and thus was an "agency" and "instrumentality" of a foreign government, as those terms are used in the FCPA, Title 15, United States Code, 78dd-2(h)(2).

TENEX established a wholly-owned subsidiary company located in the United States in or about October 2010, TENAM Corporation ("TENAM"). TENAM was TENEX's official representative office in the United States. TENAM was indirectly owned and controlled by, and performed functions of, the government of the Russian Federation, and thus was an "agency" and "instrumentality" of a foreign government, as those terms are used in the FCPA, Title 15, United States Code, 78dd-2(h)(2).

Foreign Official One, a national of the Russian Federation, was a Director of TENEX from at least 2004 through in or about October 2010, and was the President of TENAM from in or about October 2010 through in or about October 2014. Foreign Official One was a "foreign official," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2). From in or about December 2011 through in or about October 2014, Foreign Official One was a resident of Maryland.

Co-Conspirator One was an owner and executive of Transportation Corporation A from in or about 1998 to in or about December 2009, and a consultant to Transportation Corporation A from in or about January 2010 through in or about 2011.

9

Cylinder Corporation A was a company, based in Ohio, which engaged in the manufacture of tanks and vessels for the oil and gas, nuclear, and marine markets. Cylinder Corporation A secured contracts with TENEX to supply storage and transportation cylinders. In or about September 2012, Cylinder Corporation A was acquired by another company headquartered in Ohio ("Ohio Corporation").

Between in or about 2004 through in or about 2014, in the District of Maryland and elsewhere, **CONDREY** knowingly combined, conspired, confederated, and agreed with others to commit offenses against the United States, namely to violate the Foreign Corrupt Practices Act ("FCPA"), in violation of 15 U.S.C. § 78dd-2, and to commit wire fraud, in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 371. Specifically, **CONDREY** and other co-conspirators, including Co-Conspirator One, agreed to make payments, and caused Transportation Corporation A to make payments, at the direction of, and for the benefit of, Foreign Official One in order to obtain and retain business with TENEX. Further, in order to effectuate the bribe payments to Foreign Official One, **CONDREY** and other co-conspirators obtained the money used to pay the bribes by inflating the prices Transportation Corporation A charged TENEX for services, thereby depriving TENEX of money and property, in violation of 18 U.S.C. § 1343.

In furtherance of the conspiracy, and to effect the objects of the conspiracy, **CONDREY** and other co-conspirators discussed making bribe payments with Foreign Official One in person and via electronic mail ("email"). For example, on or about October 30, 2013, **CONDREY** sent an email to Foreign Official One with the subject "LF" that attached the details of a payment that was made in furtherance of the scheme. The terms "LF," "lucky figure," "cake," and "remuneration" were code words used by **CONDREY** and others to describe the bribe payments that were promised and made to Foreign Official One.

In order to make the bribe payments to Foreign Official One, **CONDREY** and other co-conspirators caused Transportation Corporation A to make payments to offshore bank accounts at the direction of, and for the benefit of, Foreign Official One, including a wire transfer in the amount of $77,896 from Transportation Corporation A's bank account in Maryland on October 30, 2013, to a bank account located in Zurich, Switzerland. **CONDREY** knew it was wrong to make, and agree to make, the bribe payments. **CONDREY** also knew that the bribe payments were made for the benefit of Foreign Official One, and the payments were promised, and made, in order to influence Foreign Official One in his official capacity and to secure an improper advantage for Transportation Corporation A.

Further, as part of the conspiracy, **CONDREY** and other co-conspirators caused Transportation Corporation A to increase the prices it charged TENEX by the amount of the bribe payments promised to Foreign Official One. **CONDREY** and other co-conspirators sent, and caused Transportation Corporation A to send, quotations and invoices to TENEX that hid the cost of the bribe payments promised to Foreign Official One within the total of Transportation Corporation A's pricing. While keeping the bribe costs hidden from TENEX, **CONDREY** sent emails to Foreign Official One regarding the amount of the bribe payments that were promised and paid in furtherance of the scheme.

**CONDREY** and others also caused Transportation Corporation A to act as an intermediary for a payment Ohio Corporation made for the benefit of Foreign Official One. Specifically, on or about November 29, 2013, Ohio Corporation made a payment to Transportation Corporation A in the amount of $30,900 with the understanding that Transportation Corporation A would send the money to an account at the direction of Foreign Official One. Shortly afterwards, on or about December 16, 2013, Transportation Corporation A sent a wire transfer in the amount of $57,713.42 from Transportation Corporation A's bank account in Maryland to a bank account in Zurich, Switzerland, that included the payment Ohio Corporation made for the benefit of Foreign Official One, minus a fee, in addition to a payment Transportation Corporation A made for the benefit of Foreign Official One.

From 2004 through 2014, **CONDREY** and other co-conspirators caused Transportation Corporation A to make bribe payments for the benefit of Foreign Official One totaling more than $1,000,000 in association with the bribery scheme involving Transportation Corporation A.

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_6/9/15_
Date

_Daren Condrey_
Daren Condrey

I am Daren Condrey's attorney. I have carefully reviewed the statement of facts with him.

_6/9/15_
Date

_Robert C. Bonsib, Esq._
Robert C. Bonsib, Esq.